I would like to use my time to discuss the two issues I feel are important in the case, one being the errors in the admission of the NFA and CFTC sanctions, as well as the restitution issue regarding universal currency funds. As the Court is aware, this particular investment vehicle involves a foreign currency exchange. My client, Mr. Hauze, was involved in an investment vehicle through the universal money traders. That was an unregulated activity in the foreign currency exchange. He got people to invest with him. Basically, he was a coach at a place called San Jose Christian. People came to him knowing that he was involved in this and actually became part of this vehicle. Well, they also came to him because there were representations of his prior activities and a spotless record. Well, not so much his prior activities, because he did mention that he did have experience in actual finance. However, he didn't ever... And all that experience was good. He was an absolute genius. Yes and no. Later on, he did actually disclose some of his sanctions that he did have. However, he did tell them that he didn't have any experience in the foreign currency exchange market, and the fact that it was unregulated. What happened in the case then was that there were sanctions that were imposed by the NFA and the CFTC. The District Court allowed the admission of these both as subsidized evidence as well as 444B evidence. We objected to the admission of it under the 444B analysis because the NFA sanctions and the CFTC sanctions were in fact not convictions. They were administrative hearings, administrative settlements. Starting with the NFA sanction, that particular sanction was what's called exactly a settlement agreement. There was no requirement. There was no actual admission of wrongdoing. He settled with them. As I remember the record, he told his investors that he had a spotless record. He didn't tell them at any point, I've been sanctioned by NFA or by the other administrative agency. Did he? There were... Did I miss that? There were some witnesses who testified that he did make representations of that. However, there were... A moment I met him, he sat down and he said, by the way, I've been sanctioned by NFA and I've been sanctioned by the other agency. Well, he didn't. He didn't say... No, no. Of course he didn't. Of course he didn't. And I think what we need to analyze this to is if the foreign currency exchange trade is not regulated by any body, you don't have to be regulated by NFA, you don't have to be regulated by the CFTC... If an attorney makes a representation that he's never been questioned or sanctioned by the bar association, he has a spotless record, right? Yeah. And then later it comes out that that's not true. Is that not misleading? Absolutely. However, if that attorney, let's say the attorney were sanctioned or privately reproved by the state bar for having a conviction for... Even privately reproved. It depends on the scope of his first representation. The nature of the representation. Is there... No, no. Scope, what he said. He said, I've had a clean record. To... A hand on me. Nobody's ever sanctioned me. Nobody's ever reproved me. And he's gotten some reprovals. Right. But... Doesn't that... Not to the... Not to everybody that's involved here. And I think that's the issue. If there were individual investors who said that this is what he told me, that I had a clean slate, that I'd never been sanctioned. But let's go back to the attorney. If an attorney were privately reproved for a conviction for petty theft, which is a moral turpitude offense, that doesn't have to be disclosed to a client. If you're privately reproved, it's not... I get your argument, counsel. You can continue to represent them. You can continue to do things professionally. And that's the same thing in this case. These are administrative hearings, a lower standard of evidence. He was not required to disclose this information to individuals in the foreign currency exchange. One of them was a settlement, right? Pardon? One of them was a settlement. A settlement agreement, correct. I think they both were settlement agreements. One of them had findings and then they basically agreed to accept the findings. One of them was in a supervisory capacity and the other one had to do with an individual client. But in any event, both of these were outside of the foreign currency exchange. There was no duty to disclose those. And he, in fact, did disclose them when we get to the UCF, which did require disclosure because it was being... It was regulated by different bodies. And in that case, he did disclose. He was disciplined. And he also gave the information of where they can contact the NFA. And I think, as we talked about in our brief, a small amount of due diligence would have contacted the NFA, would have shown any investor that, in fact, he had been sanctioned by these bodies. Is there any regulatory body that regulates who and how investments in foreign currency can be made? No. It's an unregulated market. It's an unregulated market at the time. I mean, it may have changed since then, and I'm sure the government can tell you, but at the time of this trial, at the time of the offenses, it was unregulated. In fact, Mr. Hawes, regardless of any... He could have had a string of NFA sanctions and findings and settlements. He still could have traded in this particular market and still did not have the duty to disclose that unless he told people, I've never been sanctioned by the NFA. Unless he told people that I've never had a situation where a body has sanctioned me, and that just wasn't the case. Well, but he did say he had a long and supposed history since 1987 in financial markets. He had a website that said he had the highest degree of ethics and responsibility and great performance history since 1993. He represented he had high returns in 99, 2000, and 2001. That wasn't even in the same entity, and that's when the violations occurred. And I guess the bottom line of what you're saying is because the government doesn't have an entity which does this. This is all civil, and we entered into a settlement about it. I don't have to say anything. Well, not necessarily. What I'm saying is that they were admitted into the record and they admitted against Mr. Hawes when, in fact, they didn't have any bearing on the case itself. Well, I guess I'm having a tough time, again, seeing how it didn't have any bearing at all when he's saying since 87 he has a successful history. Since 93, he has the highest degree of ethics and responsibility, and he's had high returns in 99, 2000, and 2001. Well, any high returns, whether he's been sanctioned by the NFA or the CFTC, which are different bodies, has really no bearing as to whether or not he's making a false statement as to his high returns. That's what you're asking me to suggest. Because they're not government agencies? No, not necessarily. What I'm saying is that if you get into a trial and a jury hears about these sanctions by a government board, they equate them to a conviction, which is totally different from what happens here. And counsel just sits around and lets them do it? Pardon? Counsel just sits around and lets them do it? Or doesn't he point out, these are not the same? I did do that. All right. And you pointed it out, so they had well in front of them what the deal was. Not necessarily, because I guess the jurors don't look at... I mean, they look at the government as being all-powerful, and the government decided that this person had engaged in the wrongdoing, therefore he's involved in all of this wrongdoing. I see. And before I run out of time, moving over to the UMT and UCF restitution issue that we discussed. They're entirely different vehicles here. The Universal Money Traders is the foreign currency exchange while the UCF, the Universal Currency Fund, is a hedge fund. This was completely... First of all, it wasn't advertised on the website. There were no active sales, and Mr. Haas did not go out and actively seek these individuals. There's no issues of stop-loss. It was administered separately by Kaplan & Company. Mr. Haas received a salary, and in fact this entire salary for this vehicle was $4,194. That particular vehicle made money at the beginning. Actually, I think in a month-long period it made almost $200,000 additional to what its initial investment was. And then with the market, it just crashed. And there's nothing the government proposed in this particular case that there was any fraud involved in the Universal Currency Fund in the trading, in the administration, in the salary draw, anything. They're saying that basically had they known that Mr. Haas was a horrible currency fund trader, they would have never entered this particular vehicle. So what they did was essentially put three or four representative clients who said, yeah, if he had told me that, I would have never invested. But we don't know about the rest of the investors. I mean, they're now saying that everything was fraud. Every penny, every trade, everything that had to do with universal currency was fraud when in fact there's nothing on the record that could indicate that. Do you point out any place where we can find any investors who, one, invested in UCF, suffered loss as a result, and whose investment was unconnected to some fraudulent conduct? I don't understand. The UCF investors? Right. Well, there were only three or four that presented at trial that said they lost money as a result of a universal currency fund. And had they known that Mr. Haas was a horrible trader or had misrepresented his profits, they would have never invested. The rest of those investors in UCF never testified at trial. The rest of them didn't, couldn't have relied on any type of fraud that I know, that I'm aware of. So they wouldn't have lost money as a result of fraud. They lost money because there was bad trade. There were bad trades. You say that, but I tried to find... I mean... Here we've got fraudulent conduct with respect to UMT. The judge is suggesting it's closely related to the losses suffered by the investors in UCF. And the reason why is because many of your clients invested in UCF based on purported performance in UMT. That's why they linked the two. That's what he supposed that those investors who did lose money invested because they felt that UMT was making money. But that's not always the case. There were other individual investors that weren't brought into trial that never testified at trial. They were part of the UCF which we don't know why they invested. It's a hedge fund. It's a hedge fund that's a more secure vehicle. Once again, it was independently audited. It was administered by outside agencies. And there was no fraud involved in that. They just lost money because of the market and the trading that happened. If there's no further questions... Thank you. Good morning. William Cole for the United States Manifesto Court. Turning first, Your Honor, to the issue of the admission of the NF... Your Honors, the NFA and CFTC sanctions. I want to point out first of all that there was, in fact, a jury instruction. It's a Supplemental Excerpt of Record 417 that made clear that these were not criminal convictions. So that was made very clear. The court took great pains to make sure that the jury did not misconstrue the nature of those findings. However, they were... It was not ever represented the truth about these sanctions. At first, during the initial period of UMT from 2002... Pardon me, Counsel.    Mr. Carlos that Mr. Hawes did not have to reveal that he had been sanctioned by NFA or CFTC or CFTC or CFTC or CFTC by NFA and CFTC to investors in UCF. I do not agree with that because Mr. Hawes did not remain silent about his background. I am not... Let's start from scratch. If he hadn't said anything about his background if he just said my name is Hawes period would he have had to have revealed NFA and CFTC sanctions? I believe that because he was a fiduciary he likely still would have had a legal obligation to disclose it. Why was he a fiduciary? Well, because he was accepting he was accepting money and basically the power of attorney to trade on behalf of the court. Do you think that a requirement of conviction is or of judgment against Mr. Hawsey is that he was a fiduciary? Is that a requirement? No, no. Then why are you talking about it? Only to respond to Your Honor's question. We never argued we never argued that his duty to disclose arose from a fiduciary. Whoever whoever is the statutory word whoever makes a fraudulent statement doesn't have to doesn't say whoever whatever fiduciary. That's right. The only reason I brought that up is Tell me again the basis if you have one for saying that starting from scratch before he made any representations he would have had to have revealed the NFA and CFTC sanctions. If that's your position. No, that's not my position. All right. That's not that's why I backtracked. So so then the failure to reveal becomes misleading only in light of something else he said and that something else is that something else is his history his history not only as to what he was supposedly doing over the years which in fact And how where was that where was the evidence of what his history was in the trial record? Yes, Your Honor. The history was at Supplemental Excerpt of Record page 238 begins a series of that is his perspectives for UCF. Also there's the trading history on Supplemental Excerpt of Record 241 to 242 indicating trading as one of Your Honor has mentioned earlier indicating trading for example in 2000 and 2001 claiming a trading performance history for UMT in 2000 and 2001 well what was really going on in 2000 and 2001? Well first of all UMT didn't even exist instead Mr. Haas was at Concord Trading  was engaging in deceptive sales practices that resulted in the sanctions and so we are not here to argue that someone has an automatic obligation to disclose past troubles to an investor it is only because he chose to speak or speak about his past he spoke about where he supposedly had been what his performance history supposedly was and as mentioned earlier he declared that he had the highest degree of ethics and responsibility where does it say that? highest degree of ethics and responsibility is on supplemental action for record 244 and it's on the website I'm sorry that's the page side but it was on the website and so once he speaks in this manner and even your honor when he gets to when finally two years later so he starts UMT in 2002 by 2004 by his own admission in surreptitiously recorded conversations he says he knew he was busted the money was gone that he didn't think he'd have to tell anybody it was gone because he had powers of attorney and they never figured it out you know I'm just wondering whether this wasn't overkill by the government by introducing the sanctions evidence also I'm wondering was there ever an objection made on 403 grounds that it was unfairly and  pre-trial motions limiting hearings that it was prejudicious client so that ground I just can't remember the side of the rule but I believe that ground was I found that both grounds justified admission how is it part of the scheme itself well if you look at cases like that are cited in the government brief it gets back to the issue we were addressing which is the duty to speak comes if you misrepresent your past  have an obligation to not conceal the truth about your past that goes to being part of the scheme and as I mentioned Wellington Palandino and Rebold are three examples of cases where the court found exactly that and in those cases this court talked about look we're not going we're not going to the outer extreme and saying that someone always has to talk about their criminal convictions but once they choose to start talking about their past in ways that are not accurate now it's fraud if they don't disclose the truth and of course in the 9th circuit instruction itself for fraud wire or mail fraud it talks about concealments and the government's position under that ground for admission is that the court did not abuse discretion for that purpose there's also the purpose and then there's harmless error and the government's position would be that even if the court abused discretion on both grounds and we obviously don't believe it did on either that the evidence was it was in fact overwhelming the fraud in this case this was people's retirement money was taken it was busted blown out through horrible trading activity without any regard for what their instructions were as to how many units to trade without any regard for representations as to security and stop-loss and they were given monthly account statements claiming they were making money all the while sales representatives were out making phone calls seeking more money from investors this was the evidence was overwhelming and on the restitution point that was raised by Mr. Haas I want to first make sure that it's clear that this question of restitution has no bearing on the guidelines or the custodial time the government took a very conservative position and chose the lower offense level for a loss that would go all the way down to 2.5 million and so this is purely a question as to the restitution judgment and there I would just point out that it's only a supplementary record 212 to 213 and page 227 the court found several reasons that UCF was part of the same scheme as UMT they were operated out of the same office Haas was the executive director of UMT and he also found that the prospectus itself misrepresented Mr. Haas' history and that finding goes to the fact that in UCF when Mr. Haas actually did disclose part of his NFA sanction it was very deceptive he claimed in the prospectus that he had been sanctioned for failing to supervise someone else in fact the NFA sanctioned him also for himself personally misrepresenting and the misrepresentation was critical because it was so similar to what happened here  the   was  deceptive he claimed       to supervise  in fact the NFA sanctioned him also for himself personally misrepresenting and the misrepresentation was critical because it was so similar to what
judges: Wardlaw, Bea, Smith